Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Alison L. Gregoire
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       v.<br><br>EMMALENA ANN MICHEL,<br><br>              Defendant. | Case No. 2:22-CR-00049-RMP-1<br><br>PLAINTIFF'S SENTENCING MEMORANDUM |

United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, Alison L. Gregoire, Assistant United States Attorney, submits the following sentencing memorandum:

## I.

## STATEMENT OF FACTS

On October 23, 2021, officers with the Colville Tribal Police Department responded to a traffic collision wherein two minors had been struck by a drunk driver in a Tundra truck. The first victim was a 13-year-old female, JK, and the second victim was a 15-year-old male, DP. JK was transported by helicopter to Sacred Heart Medical Center where her considerable injuries were treated. DP was pronounced deceased at the scene. The driver of the Tundra truck struck another vehicle after hitting DP and JK, spinning the second vehicle 180 degrees. The driver of the Tundra then exited the truck and fled on foot.

United States' Sentencing Memorandum - 1

The Tundra was registered to Defendant, Emmalena Ann Michel. Additionally multiple witnesses on scene identified Defendant as the driver. A 10-year old witness, JK's sister, saw Defendant exit the Tundra and say, "I'm sorry," before running from the scene. The 10-year old noted Defendant smelled of alcohol, and the 10-year old's mother (also JK's mother), who was also present, noted Defendant appeared to be intoxicated at the time. Additionally, another witness, Vernon Lawrence, stated he had fallen back from the Tundra because the driver seemed to be drunk and was driving down the middle turn lane.

Washington State Patrol prepared a collision synopsis indicating the Tundra was traveling at a rate of speed between 46.96 and 51.25 miles per hour (in a 25 mile per hour zone), when the Tundra struck the children. The Tundra was searched and found to have alcohol containers inside.

Later that same evening, Defendant turned herself into law enforcement. She provided a breath sample at that time that registered .081 percent blood alcohol content; her blood was also found to be positive for Carboxy-THC. She made spontaneous statements including, "I need help, I need counseling;" and "I'm so sorry, I'm so sorry."

## II.
## SENTENCING CALCULATIONS

The government agrees with United States Probation that Defendant's total offense level is 21, criminal history category is I, and guideline range is 37-46 months. The government has previously filed a motion for upward departure/variance. ECF No. 50. The government is seeking 60 months on Count 1 and 48 months on Count 2, to run concurrent for a total sentence to 60 months of imprisonment.

///

///

///

United States' Sentencing Memorandum - 2

## III.

## GOVERNMENT'S OBJECTION TO PSIR

The government has no objections to the PSIR.

## IV.

## RESPONSE TO DEFENDANT'S OBJECTIONS TO PSIR

Defendant has filed no objections to the PSIR as of the date of this memorandum.

## V.

## SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

In determining the appropriate sentence, this Court should consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The circumstances of the offense involve Defendant's driving a truck, at a speed nearly double the posted speed limit, on a residential street, when she had been drinking. Tragically, the circumstances of the offense involve Defendant striking and killing a teenage boy and seriously injuring a teenage girl. She knew both children. As the young boy lay dying in the street, Defendant fled the scene of the accident on foot.

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

The government asks that the Court sentence Defendant to imprisonment for 60 months or 5 years. The government also asks for three years of supervised release. The government believes 60 months of imprisonment is required to reflect the seriousness of the offense, promote respect for the law, or provide just punishment.

///

///

United States' Sentencing Memorandum - 3

The government anticipates the victims will speak directly to the Court at sentencing and will not recite their anticipated statements[1] here, but suffice to say the damage that has been done is extreme, it is painful, and it is forever.

DP's mom, Amanda, notes in the PSIR that the death of her first child has impacted her younger child (who now struggles mentally and in school), her father (who is having trouble just surviving the loss) and her ability to work (at a medical facility where she has trouble responding to people in a similar condition to her son when paramedics arrived). ECF No. 48 at ¶ 32. She notes of her first born "He was a great kid. Everyone loved him." *Id.* at ¶ 33. This sweet boy, who did not like confrontation, loved his culture, hunting and fishing. *Id.* at ¶ 33-34. She notes the young boy "had plans" and had "so much to live for." *Id.* at ¶ 36. He had "college ahead of him." *Id.* at 41.

DP's mother notes she does not sleep, she has constant fear and anxiety, she fears losing her daughter, and she no longer trusts people like she did before. ECF No. 58 at 47. She states losing her son "is beyond anything I have ever endured. The pain has not subsided, and it never will." *Id.* She details several ways her pain will go on saying, "even in death I worry about my son and if he is okay wherever he is." *Id.*

DP's mother provides a long list of nevers—things often taken for granted that DP will never have a chance to do. She describes how Defendant robbed DP

---

[1] The government noted earlier (ECF No. 50) that the victims would have photographs as well as an audio announcement played at DP's school announcing his death, as part of their victim impact statements. The audio recording has been previously provided, with the victim impact statements, to U.S. Probation (it was forwarded to defense counsel immediately upon receipt). The photographs, because they portray the victims were minors, are appended hereto under seal. *See* Appendix.

United States' Sentencing Memorandum - 4

of many firsts he should have been able to share with his family. His mother notes DP will never graduate high school or college, never get married and have a family of his own, never get meet his little sister with whom DP's mother is pregnant as of this writing. ECF No. 58 at 49.

She recounts the day Defendant hit her son, DP. While Defendant fled on foot, Amanda, who was out of town at a conference had her friend hold a phone up to her son's ear so she could tell him she was with him. Amanda describes hearing her own mother crying, hearing the medics' machines flatlining, while knowing she was losing him. ECF No. 58 at 50.

Regardless of the sentence given to Defendant, Amanda notes she, as DP's mother, has a life sentence, "The pain I've felt since that day is a pain no parent should EVER have to endure, and I'm going to live with it for the rest of my life." ECF No. 58 at 50 (emphasis in original).

DP's aunt notes she has trouble going to her sister's house; she states, "I feel like I am waiting for him." ECF No. 48 at ¶ 42. She reflects fondly on her nephew who was killed a month before he was to turn sixteen noting, "He was the kind of kid that never let you down, always brought you up. He was spunky. He had his future plans and he kept achieving things." *Id.* at ¶ 44.

The victim of Count 2, to which Defendant also pled guilty, has also been forever impacted by this accident, as has her family. ECF No. 48 at ¶ 48. She has been secluded and isolated and goes in and out of counseling. *Id.* Her father knows she was fortunate just to survive, but "part of her died that day." *Id.* JK, the victim of Count 2, had isolated orthopedic injuries which required her admission to the hospital and a facial laceration. *Id.* at 64. That, however, fails to adequately explain the extent of the damage done to this very young girl.

When speaking to the losses she's suffered, JK herself does not cite to her considerable injuries first; instead she starts with the loss of DP noting, "This incident took the life of my first love and very best friend." ECF No. 58 at 53.

United States' Sentencing Memorandum - 5

She states when she awoke in the hospital, she asked where DP was and only then learned he was gone. *Id.*

JK did, in fact, suffer considerable injuries; she was hospitalized for over a week and required extensive surgeries. ECF No. 58 at 53. She notes needing assistance walking, to shower, go to the bathroom, and even get out of bed. *Id.* She has a steel rod in her right femur bone and a metal plate in her right forearm and states "I feel like I am never going to be physically normal." *Id.* She requires further surgery to remove the rod from her leg because of the extreme pain it is causing. *Id.* These would be traumatic injuries for an adult, but as JK reminds the reader, she just entered ninth grade this year. *Id.*

JK's mother, Kim, speaks first to DP and watching her daughter grow up right along with DP. ECF No. 58 at 55. She explains how DP came to be at the scene of the accident, indicating he wanted to go to Inchelium with Kim and JK for the last weekend of hunting season while his mother, Amanda, was in Seattle for work training. *Id.* Kim notes, "People say things happen for a reason, but I wish he went to Seattle with his mom rather than with me." *Id.*

Kim details the impact to her own daughter, and notes as a result of the accident she struggles to be a mother to her three children who have needed her more now than ever before. ECF No. 58 at 55. She notes, "My other daughter, also with me on the second ATV, witnessed the same incident with her own eyes, and she too needed me the most, and I had nothing for her." *Id.*

Kim details in the immediate aftermath of the accident, when Defendant looked at her and said, "I am sorry, Kim." ECF No. 58 at 56. She told Defendant to get help, but she went to "try and hide," without getting help, leaving the kids to die. *Id.*

///

///

///

United States' Sentencing Memorandum - 6

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

The government asserts imprisonment for 60 months is sufficient to deter criminal misconduct, provided it is accompanied by a three-year term of supervised release.

In terms of specific deterrence, Defendant is 35 years old, she is a mother of a teenager herself. ECF No. 48 at 2, ¶ 133. She has appreciable amounts of criminal history that commenced, in terms of serious offenses, when she was just 20 and committed two counts of battery. *Id.* at ¶ 91. Much of Defendant's criminal history involved assaults and/or driving while intoxicated as detailed more thoroughly in the government's motion for upward departure/variance. ECF No. 50. Having been convicted of DUI multiple times, having been through treatment multiple times, Defendant chose to drink and drive again and, in this instance, ultimately caused a loss, which can never be mitigated—can never be undone, and forever changed lives. ECF No. 48 at ¶¶ 85, 97, 146.

In terms of general deterrence, it is noted by the victims themselves that all of the people involved in this case came from the same community, and that community is watching to see what the Court will do in this case. ECF No. 48 at ¶¶ 40, 44. DP's aunt noted, when talking about the reservation and this incident, "Everyone gets a slap on the hand up here." *Id.* at ¶ 43. DP's mother indicates she hopes the Court will "make an example of this so our reservation can get the help it deserves and this does not happen to another family." *Id.* at ¶ 40. She asks "the Court to make our community a little bit safer by keeping [Defendant] behind bars as long as possible." ECF No. 58 at 51.

///

///

///

///

United States' Sentencing Memorandum - 7

> 4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

The government believes a jail term of 60 months total is necessary. The government also believes three years of supervised release during which Defendant will be accountable directly to the Court is essential. The government believes such punishment is sufficient to protect the public.

As noted in the government's motion for upward variance/departure (ECF No. 50), Defendant maintains several offenses that involve drinking or assaults or both. In December of 2009, Defendant got a DUI in King County. ECF No. 48 at ¶ 81. She also has tribal convictions from 2008 for, among other offenses, Driving While Intoxicated and Reckless Driving. ECF No. 48 at ¶ 97. In that instance, again there was a car wreck, again Defendant was the driver, and again she was intoxicated with a breath test resulting in a reading of .192 percent blood alcohol content. ECF No. 48 at ¶ 98. In the instant case, Defendant provided a breath sample, at 11:30 p.m., approximately ten hours after the accident, that registered .081 percent blood alcohol content, again choosing to drive while heavily intoxicated.

As an adult, Defendant pled guilty to a number of tribal assault and battery offenses to include two counts of battery from February 10, 2008, an additional assault and battery committed on March 16, 2008, and an additional two counts of battery committed on June 6, 2008. ECF No. 48 at ¶ 91.

Defendant's convictions have not deterred Defendant's ongoing and escalating criminal conduct. Defendant, an acknowledged alcoholic who continues to drive drunk and who has otherwise assaulted several people *does* pose a danger to the public. The public does need protection from this Defendant. The fact of conviction has proven an ineffective deterrent, and a significant sentence is necessary to protect the public from further harm.

United States' Sentencing Memorandum - 8

5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

Defendant has not identified any needed educational or vocational training. Defendant has identified an issue with alcoholism[2] and the government endorses her requests for any continued treatment while confined and after any jail term has been completed. ECF No. 58 at ¶¶ 143, 146.

6. <u>The kinds of sentences available.</u>

Defendant is subject to a sentence involving a term of imprisonment. The government is recommending 60 months of confinement followed by three years of supervised release.

The government also notes restitution is required by statute. *See* 18 U.S.C. § 3663A. The government seeks $4,706.42 for burial costs for DP. The government also seeks restitution for the value of the ATV DP and JK were on when Defendant hit them, in the amount of $4,080.

7. <u>The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.</u>

The government's proposed sentence requires an upward variance from the guideline range. Such an upward variance will not generate an unwarranted

---

[2] Defendant went to treatment (both inpatient and outpatient) in 2017. ECF No. 58 at ¶146. Defendant attributed her relapse due to being "peer pressured into drinking by Antonio Perez." *Id.* at ¶ 148. Of note, the police reports requested by Defendant and ordered by this Court note Mr. Perez and Defendant had a no contact order in place in May of 2016 and were engaged in custody disputes and accusing each other of being a negligent parent thereafter. It is, therefore, difficult to understand how Mr. Perez was in a position to "peer pressure" Defendant into drinking, thereby causing her relapse.

United States' Sentencing Memorandum - 9

sentencing disparity. Most crimes of this type are handled in state court; this one is in federal court because of the location where it occurred and the enrollment status of the parties involved. Were Defendant in state court on this record, her guideline range would have been 95 to 125 months of imprisonment.[3] The government's recommended sentence will not generate a disparity with relation to similarly situated defendants.

## VI.

## GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends the court impose a sentence to 5 years of imprisonment as well as a three year term of supervised release.

Respectfully submitted this 24 day of February, 2023.

Vanessa R. Waldref
United States Attorney

s/*Alison L. Gregoire*
Alison L. Gregoire
Assistant United States Attorney

---

[3] Whether Defendant was convicted pursuant to RCW 46.61.520(1)(a) or (b), the guideline would be the same, the offender score only raised by 2 based on the second count for the serious bodily injury inflicted on JK. *See* RCW 9.94A.525(11).

United States' Sentencing Memorandum - 10

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Lorinda Youngcourt, Kathryn Lucido, Federal Defenders.

s/*Alison L. Gregoire*
Alison L. Gregoire
Assistant United States Attorney

United States' Sentencing Memorandum - 11